IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**VELVIE L. DOMINGUEZ,**                    Case No. 1:16 CV 2769

    Plaintiff,                                        Judge Sara Lioi

    v.                                                       Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                                        REPORT AND RECOMMENDATION

## INTRODUCTION

Plaintiff Velvie L. Dominguez ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated November 14, 2016). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be reversed and remanded.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB in April 2013, alleging a disability onset date of April 5, 2013.[1] (Tr. 177). Her claims were denied initially and upon reconsideration. (Tr. 113-29). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on August 19, 2015. (Tr. 30-68). On September 16, 2015, the ALJ found Plaintiff not disabled in a written decision. (Tr. 13-

---

1. Plaintiff previously applied for DIB and was denied on April 4, 2013. *See* Tr. 69-84. Her alleged disability onset date is the date following that previous denial.

23). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6); *see* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely filed the instant action on November 14, 2016. (Doc. 1).

## FACTUAL BACKGROUND

<u>Personal Background & Testimony</u>

Plaintiff was born in December 1961, and was 53 years old at the time of her hearing. (Tr. 37). She had an associate's degree in medical assisting from 2010, but her certification had expired. (Tr. 39). At the time of the hearing, Plaintiff lived by herself in an apartment. (Tr. 37-38). She had a 90 percent disability rating through the Veteran's Association due to her knees and back. (Tr. 38).

Plaintiff believed she was disabled because she could not "do the jobs [she] used to do to the extent that [she] could before. And it just seems like all [her] conditions have gotten worse, the knees, the shoulders, [her] back. So . . . [she] can't function like [she] . . . normally did." (Tr. 42).

Plaintiff had a cane at the hearing, which her sister gave her because she "started feeling very wobbly with walking". (Tr. 43). She began using the cane sometime after April 2015 (Tr. 46-47), and used it "most days" (Tr. 44).

Plaintiff estimated she could walk "not very long" before having to stop. (Tr. 44). She had to stop "a couple of times" walking in to the hearing because she was "out of breath and just really tired." *Id.* She estimated she would have to sit for five minutes before she would "really be able to stand and walk again". *Id.* Standing was "about the same" as walking because her "knees start to bother [her]." *Id.* Sitting bothers her lower back, and she estimated she could sit for about fifteen to twenty minutes. (Tr. 45) ("I work through it, I don't normally get up and I know that, that I should."). Plaintiff did not think she could stand for four hours in a workday, but could maybe

stand for an hour total if she could break it up. (Tr. 52). Plaintiff also testified she did not think she could sit for six hours in a day due to her back problems. *Id.*

Plaintiff was not sure how much she could lift, and noted her sisters helped with groceries and laundry. (Tr. 45). Plaintiff testified her sister did her laundry about once per week, and she needed "help because of the lifting with [her] back" (Tr. 48) and "the bending" causes her difficulty (Tr. 49). Plaintiff cooked and cleaned "a little bit at a time", but it took her "a while to do that." (Tr. 45); *see also* Tr. 51 (testimony that Plaintiff sits down to take breaks while cooking). Plaintiff also testified her sister helps her with cleaning, "[l]ike sweeping, mopping the floor, cleaning the counters, [and] doing dishes." (Tr. 49-50). When Plaintiff did dishes, she had to lean against the counter because of her back. (Tr. 50).

Plaintiff testified to osteoarthritis in her right shoulder, and degenerative disc disease in her back. *Id.* She stated she is right-handed, and had trouble reaching her right arm over her head. *Id.* Plaintiff also testified she has to be careful when reaching in front of her or to the side. *Id.* Plaintiff had undergone physical therapy, mostly for her hip, but some for her back. (Tr. 52-53). She testified it made her hip feel better, but for less than 24 hours. (Tr. 53).

Plaintiff took medication for her pain, and it "lessens the pain, it doesn't take it all away." (Tr. 54). Her pain was a five out of ten without the medication, and a two out of ten with the medication. (Tr. 54-55).

In April 2015, Plaintiff was diagnosed with a brain mass after suffering a seizure. (Tr. 55). Plaintiff was undergoing chemotherapy, which made her fatigued, and nauseated. (Tr. 56-57).

Relevant Medical Evidence[2]

*Treatment Evidence*

In October 2011, Plaintiff underwent MRIs of both shoulders, and her right knee. (Tr. 248-53). The right shoulder MRI, performed due to impingement and decreased range of motion, showed mild acromioclavicular degenerative changes. (Tr. 248-49). The left shoulder MRI, performed for the same reasons, showed mild tendinopathy of the supraspinatus and infraspinatus tendons, glenohumeral and acromioclavicular degenerative changes, and possible bursitis. (Tr. 250-51). The right knee MRI, performed due to pain "with locking and giving out", showed an oblique undersurface tear of the lateral meniscus involving the anterior horn and body, and more than 50 percent diffuse patellofemoral cartilage loss. (Tr. 252-53).

In January 2012, Plaintiff went to the Orthopedic Clinic complaining of sharp pain with swelling in her right knee with activity, as well as bilateral shoulder pain. (Tr. 266). On

---

2. Plaintiff only challenges the ALJ's assessment of her physical impairments, thus, she has waived any challenge regarding her mental impairments. *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517-18 (6th Cir. 2010). Thus, the undersigned summarizes only the records related to Plaintiff's physical impairments. Additionally, Plaintiff's date last insured for DIB was September 30, 2014. (Tr. 15). Thus, she must establish disability after her application date of April 5, 2013, and before her date last insured of September 30, 2014. *See Garner v. Heckler*, 745 F.3d 383, 390 (6th Cir. 1987). The undersigned therefore summarizes the evidence from that time period. Plaintiff presents a significant amount of evidence post-dating her date last insured relating to her diagnosis of a brain mass (and ultimate diagnosis of central nervous system lymphoproliferative disorder), and treatment thereof. "Evidence of disability after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin*, 88 F. App'x 841, 846 (6th Cir. 2004). Record medical evidence from after a claimant's date last insured is only relevant to a disability determination where the evidence relates back to the claimant's limitations prior to the date last insured. *See Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988) (medical evidence after date last insured was only minimally probative of claimant's condition before date last insured, so did not affect disability determination); *see also Begley v. Matthews,* 544 F.2d 1345, 1354 (6th Cir. 1976) ("Medical evidence of a subsequent condition of health, *reasonably proximate to a preceding time* may be used to establish the existence of the same condition at the preceding time.") (emphasis added). While Plaintiff summarizes this evidence, she presents no argument it is relevant to her condition prior to her date last insured. Therefore, the undersigned does not include that evidence in this summary.

examination, Plaintiff had full range of motion in her knee, an "impressive lateral McMurray" test, moderate swelling in her shoulders, and pain with empty can and across body tests. *Id.* Plaintiff underwent corticosteroid injections in her right knee and shoulder. (Tr. 266-68). Plaintiff was also fit with an open patella knee sleeve. (Tr. 266).

The following month, Plaintiff reported the injection helped her right knee for a few days, but the shoulder injection did not help. (Tr. 265). She still had shoulder pain, but thought it had "gotten a little bit better." *Id.* She had "good internal and external rotation of both shoulders and no instability", but had tenderness in the acromioclavicular joint on the right, and at the lateral border of the acromion on the left. *Id.* Plaintiff declined a left shoulder injection. *Id.* Plaintiff received instructions on leg strengthening and shoulder range of motion exercises, and instructed to use ibuprofen (600 milligrams three times per day until pain under control). (Tr. 266).

In May 2013, Plaintiff underwent x-rays of her pelvis, hips, and spine. (Tr. 366-73). The cervical spine x-ray showed degenerative disc disease showed degenerative disc disease at C5-6 and C6-7, and straightening of the normal curvature consistent with muscle spasm. (Tr. 368). The thoracic spine x-ray showed no acute bony pathology, vertebral body heights preserved, findings consistent with muscle spasm, and "[m]inimal" degenerative disc disease. (Tr. 370-71). The lumbar spine x-ray showed straightening of the normal curvature consistent with muscle spasm, and "[m]inimal" degenerative disc disease. (Tr. 372). The pelvic and hip x-rays were unremarkable. (Tr. 366).

In August 2013, Plaintiff saw nurse practitioner Carol Kercher for a swollen left eye due to bug bite, and a lump under her left armpit. (Tr. 327). Notes indicated Plaintiff was "interested in the MOVE program and suggestions to lose weight." *Id.* Plaintiff reported "chronic pain, swelling, stiffness, weakness, [and] fibromyalgia." (Tr. 328). On examination, Ms. Kercher noted

Plaintiff had full range of motion, no muscle atrophy, and symmetrical muscle strength, but "[c]hronic pain neck, shoulders, back, knees, right hip." (Tr. 329).

Plaintiff returned to Ms. Kercher in December 2013 regarding the lump in her armpit. (Tr. 477). Plaintiff also reported "ongoing joint pain." *Id.* Ms. Kercher assessed irritation, sinusitis, and new diagnosis of diabetes mellitus. (Tr. 478).

Plaintiff returned to Ms. Kercher in March 2014 complaining of back and right hip pain. (Tr. 1176). Two weeks later, Ms. Kercher sent Plaintiff a letter stating her "x-rays were normal" and her "plan to begin an exercise program is an excellent one as long as you exercise to your own tolerance." (Tr. 1164).

In December 2014, Plaintiff returned to Ms. Kercher for follow up. (Tr. 1151). She complained of chronic bilateral knee and right hip pain. (Tr. 1152). Ms. Kercher assessed knee, hip, and lower back pain and recommended weight loss, exercise, and an orthopedic consult after x-rays. (Tr. 1153).

In January 2015, Plaintiff underwent an orthopedic surgery consult with Harvey Insler, M.D., due to pain in both knees and her right hip. (Tr. 1135). Plaintiff reported a prior right knee MRI "that showed a torn meniscus", and an increase in symptoms when she got down on the floor to help her son. *Id.* Dr. Insler noted "x-rays of the hip and knees show minimal degenerative changes." *Id.* His impression was tendonitis and bursitis, and a torn meniscus, and his plan was physical therapy, and to consider an injection if unsuccessful. *Id.* He also noted that because locking or giving way was "not really an issue", he would "leave the meniscus alone for now". *Id.*

Plaintiff underwent physical therapy in January and February 2015. (Tr. 965-1007).

In April 2015, Plaintiff was diagnosed with a brain tumor after suffering a seizure. (Tr. 956-62). Plaintiff subsequently underwent additional testing, and treatment, including chemotherapy. *See generally* Tr. 1012-41; 1043-59; 1177-1202.

*Opinion Evidence*

In June 2013, Plaintiff underwent an evaluation for VA disability benefits with Chad Christman, D.O. (Tr. 336-61). He completed three "Disability Benefits Questionnaire[s]" for: 1) hip and thigh conditions (Tr. 336-44); 2) back (thoracolumbar spine) conditions (Tr. 345-53); and 3) neck (cervical spine) conditions (Tr. 354-61). On the hip questionnaire, Dr. Christman noted bilateral hip bursitis, and on examination, found limited hip flexion and extension and 4/5 muscle strength. (Tr. 336-41). He opined Plaintiff could not "lift often and not much weight", could walk 200 feet at one time, walk ten minutes at a time during an eight-hour workday, and that she could "intermittently" sit/stand. (Tr. 344). On the thoracolumbar spine questionnaire, Dr. Christman noted degenerative disc disease of the thoracolumbar spine with intervertebral disc syndrome in the lumbar spine with radiculopathy to bilateral lower extremities. (Tr. 345). On examination, he found Plaintiff had reduced range of motion and some reduced muscle strength. (Tr. 346-48). Dr. Christman could not opine as to how much and how often Plaintiff could lift, noting "doesn't know as she doesn't attempt". (Tr. 352). He opined that due to her thoracolumbar spine limitations, Plaintiff could walk approximately 100 yards, and could sit, stand, or walk an unlimited amount during an eight-hour workday "if intermittent". *Id.* On the cervical spine questionnaire, Dr. Christman noted degenerative disc disease of the cervical spine. (Tr. 354). On examination, he found reduced range of motion. (Tr. 355-56). Plaintiff had full muscle strength in her elbows, wrists, and fingers, and no muscle atrophy. (Tr. 357-58). Regarding the functional impact of her neck impairment Dr. Christman noted lifting was "difficult" and Plaintiff could not "lift much and

no repetition." (Tr. 361). He opined she could walk 200 feet at one time, and walk for 10 minutes every hour during an eight hour workday, and could sit or stand "intermittently the entire day." *Id.*

In December 2013, state agency physician Diane Manos, M.D., reviewed Plaintiff's records and opined Plaintiff could perform:

> Light work. Must have sit and stand opinion that allows her to alternate between sitting and standing for 5 minutes every hour throughout the day. Precluded from climbing ladders[,] ropes and scaffolds. Occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. Occasionally reach overhead. She must avoid concentrated exposure to moving machinery[,] unprotected heights and hazardous machinery.

(Tr. 93). Dr. Manos noted this was an adoption of the prior ALJ's decision under Acquiescence Ruling 98-4. *Id.*

In March 2014, state agency physician Abraham Mikalov, M.D., reviewed Plaintiff's records and adopted the same RFC. (Tr. 107).

VE Testimony

Before posing any hypothetical questions, the ALJ requested the VE "for each one, please let me know if anything that you give conflicts with the Dictionary of Occupational Titles or the Selective Characteristics of Occupations." (Tr. 65).

The ALJ first asked the VE to consider a person who could perform:

> light work that would require a sit/stand option for five minutes every hour. That can occasionally climb ramps or stairs. Never climb ladders, ropes, or scaffolds. Can occasionally balance, stoop, kneel, crouch, or crawl. Occasionally reach overhead bilaterally. Must avoid concentrated exposure to hazards such as, unprotected heights, moving machinery, and commercial driving. Can perform simple tasks and can interact with supervisors, coworkers, and the public if that interaction is limited to speaking and signaling.

*Id.* The VE testified such an individual could not perform Plaintiff's past work, but could perform the jobs of packager, food service worker, and mail clerk. (Tr. 66). The ALJ again asked "[i]s your testimony consistent with the DOT", to which the VE responded "Yes, it is." (Tr. 67).

The ALJ then asked the VE to consider the same hypothetical individual, but restricted to sedentary work. The VE testified such an individual would still be unable to perform past work. *Id.* The ALJ again asked: "And is your testimony consistent with the DOT?", and the VE responded "Yes, it is." *Id.*

Finally, the ALJ asked Plaintiff's counsel if she had any questions for the VE, and she responded "No." *Id.*

ALJ Decision

On review, the ALJ found Plaintiff's date last insured was September 30, 2014, and that she had not engaged in substantial gainful activity between her alleged onset date and her date last insured. (Tr. 15-16). He concluded Plaintiff had severe impairments of bilateral knee degenerative osteoarthritis, obesity, disorder of the back, affective disorders, and anxiety disorders, but that these impairments did not meet or equal a listed impairment. (Tr. 16-17). The ALJ concluded Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except she required a sit/stand option for five minutes every hour; she could occasionally climb ramps or stairs; never climb ladders ropes or scaffolds; occasionally balance, stood, kneel, crouch or crawl; occasionally reach overhead, must have avoided concentrated exposure to hazards such as unprotected heights, moving machinery, and commercial driving; could perform simple tasks; could interact with supervisors, co-workers, and the public if that interaction was limited to speaking and signaling.

(Tr. 18). He found Plaintiff was unable to perform any past relevant work, but, based on the VE's testimony, there were other jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 20-22). The ALJ relied on the three jobs identified by the VE: packager (DOT Code 559.687-074), food service worker (DOT Code 311.677-010), and mail clerk (DOT Code 209.687-026). (Tr. 22). As a result, the ALJ found Plaintiff was not disabled at any

time from her alleged onset date of April 5, 2013, through her date last insured, September 30, 2014. *Id.*

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The

Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1.    Was claimant engaged in a substantial gainful activity?

2.    Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.    Does the severe impairment meet one of the listed impairments?

4.    What is claimant's residual functional capacity and can claimant perform past relevant work?

5.    Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff raises two challenges to the ALJ's decision: 1) the ALJ's Step Five finding that Plaintiff could perform specific jobs is not supported by substantial evidence; and 2) the ALJ's assessment of Dr. Christman's opinions contradicts the RFC, and as a result the ALJ's decision is not supported by substantial evidence. The Commissioner responds that the ALJ's decision is supported by substantial evidence in both regards and there was no error.

<u>Step Five Determination</u>

Plaintiff contends the ALJ erred at Step Five by not resolving a conflict between the RFC and the VE's testimony. Specifically, Plaintiff alleges the three jobs identified by the VE required *frequent* reaching as defined in the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"), while the ALJ here limited Plaintiff to *occasional* overhead reaching (Tr. 18). The Commissioner responds that the ALJ fulfilled the requirements regarding the Dictionary of Occupational Titles ("DOT") by inquiring of the VE whether his testimony was consistent, and, the conflict presented by Plaintiff is not a true conflict because the DOT does not distinguish between reaching generally and overhead reaching. For the reasons discussed below, the undersigned concludes the ALJ did not err in this regard.

At Step Five, the ALJ must make a finding "supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal quotation and citation omitted). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id.* If an ALJ relies on the VE's testimony in response to a hypothetical, that hypothetical must accurately portray the claimant's limitations. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010).

One of the most common tools utilized by VEs during testimony is the DOT, which is a list of "maximum requirements of occupations as generally performed," however a VE "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4p, 2000 WL 1898704, at *2. Indeed, a VE has the ability to craft his answer in response to an individualized hypothetical RFC with potential limitations unforeseen by the DOT. *See Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009) ("[An] ALJ may choose to rely on

the VE's testimony in complex cases, given the VE's ability to tailor her finding to an 'individual's particular residual functional capacity.'"). "[N]either the DOT nor [the expert's testimony] automatically trumps when there is a conflict." SSR 00-4p, 2000 WL 1898704, at *2.

Social Security Ruling 00-4p provides that an ALJ must elicit a reasonable explanation from a VE when there is an apparent conflict between the VE's testimony and the DOT:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an *apparent unresolved conflict* between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

2000 WL 1898704, at *2 (emphasis added).

The ALJ has an affirmative responsibility to "inquire, on the record, as to whether or not there is [] inconsistency" between the VE's testimony and the DOT." *Id.* Beyond this initial inquiry, however, the Sixth Circuit has held the ALJ is under no obligation to further investigate the accuracy of a VE's testimony "especially when the claimant fails to bring any conflict to the attention of the [ALJ]." *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008); *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009); *see also Beinlich*, 345 F. App'x at 168. "Absent an objection to the vocational expert's testimony, [an] ALJ reasonably relie[s] on the testimony." *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 468 (6th Cir. 2017) (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 269, 374 (6th Cir. 2006)) ("Nothing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.").

In this case, before posing hypothetical questions, the ALJ asked the VE to "for each one, please let me know if anything that you give conflicts with the Dictionary of Occupational Titles

or the Selective Characteristics of Occupations." (Tr. 65). After posing two hypothetical questions, the ALJ again asked: "And is your testimony consistent with the DOT?", and the VE testified it was. (Tr. 67). Plaintiff's counsel did not object, nor ask any questions of the VE. *Id.* The ALJ was under no further obligation to seek out conflicts absent an objection. *See Staymate*, 681 F. App'x at 468; *Martin*, 170 F. App'x at 374.

Plaintiff cites *Bennett v. Comm'r of Soc. Sec.*, 2016 WL 7395795, at *7 (N.D. Ohio)[3] to argue remand is necessary to resolve the conflict between the VE testimony and the DOT/SCO regarding reaching. *See* Doc. 16, at 19. *Bennett*, however, is distinguishable from the instant case in one significant regard: in that case, the ALJ failed to inquire of the VE whether his testimony was consistent with the DOT. *See* 2016 WL 7395795, at *6 ("At the hearing, the ALJ did not ask whether the VE's opinions were consistent with the *DOT* and, if not, whether there was a reasonable explanation for the conflict."). Rather, the ALJ stated in his decision that the VE's testimony was consistent, but did not include "any explanation of *how* the ALJ made that determination." *Id.* (emphasis in original).

By contrast, many courts within the Northern District of Ohio have "upheld ALJ Step Five determinations despite an actual conflict between the RFC and DOT where the ALJ inquired about conflicts, conflicts were not brought to the ALJ's attention, and the VE testified that no conflicts existed." *Cross v. Comm'r of Soc. Sec.*, 2017 WL 2684426, at *5 (N.D. Ohio) (collecting cases), *report and recommendation adopted by* 2017 WL 2671089. In *Cross*, after surveying numerous cases from the Sixth Circuit and Northern District of Ohio, the court concluded it was not reversible error for an ALJ to rely on a VE's testimony regarding certain jobs where the ALJ inquired of the VE whether the jobs were consistent with the DOT, and the VE said they were,

---

3. *Report and recommendation adopted by* 2016 WL 7396707 (N.D. Ohio).

even where plaintiff later pointed out the three jobs required moderate noise exposure, which the ALJ's RFC precluded. *Id.* at *5-6.

In an example much like that at issue here, one court found that a conflict between frequent reaching and handling in the DOT and occasional reaching in the RFC did not require remand because the VE testified his answers were consistent with the DOT, the ALJ was not required to inquire further, and claimant's counsel did not bring the discrepancy to the ALJ's attention. *Phillips v. Comm'r of Soc. Sec.*, 2013 WL 2153286, at *21-22 (N.D. Ohio). In *Phillips*, the court explained that:

> 'the DOT's job classifications are collective descriptions of "occupations" that can encompass numerous jobs . . . Within occupations . . . there may be variations among jobs performed for different employers', *Lindsley*, 560 F.3d at 605 . . . It is entirely possible that Plaintiff could perform work as a security guard in a position that requires only occasional reaching and handling.

*Id.* at *22.

Similarly, another court upheld an ALJ's Step Five determination despite a conflict between the reaching and handling restrictions contained within the RFC and the DOT requirements for the job:

> Plaintiff correctly asserts that the reaching and handling restrictions contained in the RFC do not comport with those set out by the DOT for the job of bench hand. Nevertheless, for a number of reasons, the Court cannot agree that this fact requires remand. First, the ALJ inquired whether the VE's testimony was consistent with the DOT, and the VE stated that it was. (Tr. 37). Additionally, Plaintiff's attorney did not identify the alleged specific discrepancy between the VE's testimony and the DOT that she now raises at the hearing. Nor has Jackson explained how the discrepancy was "apparent" at the hearing such that the ALJ should have noticed, inquired about, and resolved it. Accordingly, there is no basis to conclude that the ALJ failed to properly resolve any conflicts between the VE's testimony and the DOT.

*Jackson v. Comm'r of Soc. Sec. Admin*, 2014 WL 5810488, at *9 (N.D. Ohio). And, for similar reasons, another court found that a conflict between a VE's testimony that a claimant could

perform jobs that required occasional stooping or crouching and the DOT's listing that those jobs required frequent stooping or crouching did not require remand. *Dipalma v. Comm'r of Soc. Sec.*, 2015 WL 5559848, at *4, 11-13 (N.D. Ohio) ("The R&R first properly points out that plaintiff did not raise any discrepancies during the hearing while the VE was testifying. This burden is on the plaintiff. As a result of this failure, plaintiff has waived his opportunity to challenge any discrepancies before this Court.").

The RFC here limited Plaintiff to occasional overhead reaching. (Tr. 18). The Commissioner does not dispute Plaintiff's contention that the three jobs identified by the VE—packager, food service worker, and mail clerk—all require *frequent* reaching pursuant to the SCO. *See* Docs. 16-1, 16-2, 16-3, and 16-4. However, here, the ALJ asked the VE at the beginning of his questioning to identify any conflicts with the DOT. (Tr. 64). He then asked the VE again, after each hypothetical question, and the VE testified his opinion was consistent with the DOT. (Tr. 66, 67). Finally, the ALJ provided Plaintiff's counsel with an opportunity to question the VE, which counsel declined. (Tr. 67). Thus, Plaintiff has not shown any potential conflict was apparent to the ALJ at the time of the hearing.

For these reasons, the undersigned finds the ALJ fulfilled his obligation under SSR 00-4p. He inquired, as required, and had no obligation to investigate further. *Lindsley*, 560 F.3d at 606; *Martin*, 170 F. App'x at 374; *Beinlich*, 345 F. App'x at 168. Plaintiff's counsel did not inquire of the VE, or object to his testimony. *See* Tr. 67. Thus, the ALJ reasonably relied on the VE's unchallenged testimony to satisfy his burden at Step Five because "the conflict was no more apparent to the ALJ than in the numerous cases from this court cited above." *Cross*, 2017 WL 2684426, at *6. This is in contrast to *Bennett*, where the ALJ did not inquire of the VE about the consistency of testimony with the DOT, and therefore did not have substantial evidence to support

his finding that there were no conflicts. The undersigned therefore concludes the ALJ did not err at Step Five.

Dr. Christman's Opinion

Plaintiff next contends the ALJ erred in his analysis of Dr. Christman's opinion. Specifically, Plaintiff alleges that Dr. Christman's three opinions "tend to indicate" Plaintiff was limited to sedentary work, but the ALJ assigned them significant weight and found them consistent with light work. (Doc. 16, at 22). Plaintiff contends that despite assigning significant weight to Dr. Christman's opinions, "the ALJ never addressed the standing, walking, and lifting limitations offered by Dr. Christman" and from the decision it is unclear if he was aware of them or not. (Doc. 19, at 1). Defendant responds that the ALJ properly considered Dr. Christman's opinions as required by the regulations. For the reasons discussed below, the undersigned agrees with Plaintiff and recommends this matter be remanded.

"An ALJ is bound to adhere to certain governing standards when assessing the medical evidence in support of a disability claim." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004)). "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Id.* (citing 20 C.F.R. §§ 404.1520(a)(3), 404.1512(b), 404.1513). The regulations provide that the Commission "will always consider the medical opinions in . . . [a claimant's] case record together with the rest of the relevant evidence . . . receive[d]." 20 C.F.R. § 404.1527(b). Further, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge

must do for any opinion from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. 404.1527(e)(2)(ii).[4]

An ALJ can consider all the medical opinion evidence without directly addressing every piece of evidence in the opinion. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). However, if a medical source's opinion contradicts the ALJ's RFC finding, an ALJ must explain why he did not include the medical source's limitation in his determination of the claimant's RFC. See SSR 96-8p, 1996 WL 374184, at *7. Social Security Ruling 96-8p provides: "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.* Courts in the Northern District of Ohio have held that an ALJ's failure to comply with this regulation requires reversal. *See Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (ALJ's failure to address a medical source's opinion which conflicted with RFC constituted reversible error); *Thompson v. Comm'r of Soc. Sec. Admin*, 2014 WL 356974, at *4 (N.D. Ohio) (remanding because ALJ did not explain why she failed to adopt in the RFC a conflicting limitation assigned by medical sources); *Moretti v. Colvin*, 2014 WL 37750, at *10 (N.D. Ohio) (remanding because ALJ failed to explain why she did not include in the RFC a limitation assigned by a medical source).

As described above, Dr. Christman issued three opinions in June 2013 with regard to Plaintiff's VA disability benefits. *See* Tr. 336-61. In assessing the "Functional Impact" of each of Plaintiff's impairments, Dr. Christman concluded:

> 1. Due to Plaintiff's hip bursitis, she: 1) "[c]an't lift often and not much weight"; 2) could walk "200 feet" at one time; 3) could walk "10 minutes at a time" during an eight-hour workday; and 4) could "[i]ntermittently sit/stand" both at

---

4. The undersigned cites the version of the regulations in place at the time of the ALJ's September 2015 opinion.

one time, or during an eight-hour workday. (Tr. 344)

2. Due to Plaintiff's degenerative disc disease in her thoracolumbar spine, she: 1) could walk "100 yards approximately" at one time; 2) could walk "unlimited if intermittent" during an eight-hour workday; and 3) could sit/stand "unlimited if intermittent" both at one time, or during an eight-hour workday. (Tr. 352).[5].

3. Due to Plaintiff's degenerative disc disease of the cervical spine, she: 1) could walk "200 feet" at one time; 2) stand for "10 minutes every hour" in an eight-hour workday; and 3) sit/stand "intermittently" throughout an eight-hour workday. With regard to how much Plaintiff could lift, and how often, Dr. Christman noted: "Lifting difficult; can't lift much and no repetition. (Tr. 361).

*See generally* Tr. 336-61 (Dr. Christman's opinions).

The ALJ addressed these opinions as follows:

[T]he undersigned accords significant weight to the June 12, 2013 opinion by Chad S. Christman, D.O. at Exhibit B5F [Tr. 294-378]. Dr. Christmas opined that the claimant's hip bursitis does not result in any significant functional limitation [citing Tr. 340]. Dr. Christman also opined that the claimant's back disorder results in a loss of flexibility, with negative straight leg raising, and radicular pain which limits the claimant's ability to stand and walk and results in the need for a sit stand option throughout the day [citing Tr. 348-50, 352, 361]. Dr. Christman's opinion is consistent with the claimant's allegations of pain, her ability to sit, stand, walk, climb, lift, and carry, and x-rays dated May 2013 demonstrating mild to moderate degenerative changes in the knees and hips. [citing Tr. 294-378]

(Tr. 20). The ALJ ultimately found Plaintiff could perform a reduced range of light work, but did not add any additional restrictions regarding lifting, carrying, or standing. (Tr. 18). Light work is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

---

5. In response to a question regarding how much and how often Plaintiff could lift, Dr. Christman noted: "doesn't know as she doesn't attempt." (Tr. 352).

20 C.F.R. § 404.1567(b). Additionally, "the full range of light work requires standing or walking, off and on for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at *6.

The ALJ's opinion does not explain how he accounted for (or if he recognized) Dr. Christman's statements that Plaintiff's impairments caused functional lifting impairments. *See* Tr. 344 ("Can't lift often and not much weight"); Tr. 361 ("Lifting difficult; can't lift much and no repetition"). These limitations are inconsistent with the RFC finding Plaintiff could perform light work (which involves lifting 20 pounds, and frequent lifting and carrying of up to 10 pounds), and the ALJ was therefore required to "explain why the opinion was not adopted". SSR 96-8p, 2006 WL 374184, at *7.

Similarly, the ALJ's opinion does not reflect that he considered Dr. Christman's opinion that Plaintiff could only walk ten minutes every hour during an eight-hour workday. *See* Tr. 361.This opinion is at odds with the RFC finding that Plaintiff could perform the walking requirements of light work. *See* SSR 83-10, 1983 WL 31251, at *6 (full range of light work requires "standing or walking off and on for a total of approximately six hours in an eight-hour workday").

It is unclear from the ALJ's opinion whether he considered and rejected these additional limitations, from Dr. Christman or simply was not aware of them. For example, the ALJ stated "Dr. Christman opined that the claimant's hip bursitis does not result in any significant functional limitation." (Tr. 20) (citing Tr. 340). The ALJ appears to be citing Dr. Christman's answer to the question: "State whether pain, weakness, fatigability, or incoordination could significantly limit functional ability during flare-ups, or when the joint is used over a period of time." (Tr. 340). Dr. Christman indicated "None of these factors significantly limit functional ability." *Id.* Four pages

later, however, under the subheading "Functional Impact", Dr. Christman opined that due to her hip impairment Plaintiff: "[c]an't lift often and not much weight"; could walk "200 feet at a time"; and could walk for "10 minutes at a time" during an eight hour workday. (Tr. 344). This contradiction suggests the ALJ did not fully consider the limitations in Dr. Christman's opinions.

In some cases, the Commissioner may be able to show that an ALJ implicitly resolved conflicts in the evidence based on the ALJ's factual findings as a whole. In order to make such a showing, however, the Commissioner must point to portions of the ALJ's decision itself, rather than other evidence in the record. *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 749, 753 (6th Cir. 2011). And, "when the ALJ discounts the opinion from which the limitation is derived then the ALJ need not discuss each functional limitation contained therein." *Craig v. Comm'r of Soc. Sec.*, 2016 WL 4210952, at *6 (N.D. Ohio).

Here, the Commissioner argues it was sufficient that the ALJ "considered the opinion, cited to various parts of the questionnaires, and in fact stated that he gave significant weight to the opinion." (Doc. 18, at 11). The Commissioner also notes the ALJ expressly considered (and rejected) Plaintiff's allegation that she was limited to sedentary work, the ALJ was not required to give controlling weight to a non-treating physician's opinion, and the ALJ gave great weight to the state agency physician's opinion. *Id.* These arguments do not, however, address the regulatory requirement that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, at *7. Contrary to a case where the ALJ discounts the opinion to some degree, *see Craig*, 2016 WL 4210952, at *6, here, the ALJ stated he was giving Dr. Christman's opinion "significant weight" and did not note he was discounting any portion of that opinion, Tr. 20. Although the ALJ did discuss the other opinion evidence in the record, and opined generally that he disagreed that Plaintiff was limited to

sedentary work, this discussion "does not provide sufficient insight as to why the ALJ discounted the[se] limitation[s]", *Thompson*, 2014 WL 356974, at *4, particularly where the ALJ stated he gave the opinion "significant weight".

And, Plaintiff has shown this to be potentially harmful error. The ALJ here adopted the exertional RFC from a prior ALJ pursuant to Acquiescence Ruling 98-4:

> With respect to the claimant's exertional residual functional capacity, the undersigned adopts [the prior ALJ's] finding that the claimant could perform light work with a sit/stand option that allows her to alternate between sitting and standing for five minutes every hour throughout the day, and that she is precluded from ladders, ropes, and scaffolds, however, she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and she can occasionally reach. (exh. B1A). On August 13, 2013, the claimant alleged chronic pain, s[w]elling, and stiffness in her extremities (exh. B5, p. 35). Upon examination, the claimant maintained normal reflexes, 5/5 strength in her extremities, and a steady gait (exh. B5F p.36). Although records subsequent to the claimant's date last insured demonstrate a decrease in the claimant's abilities to lift, carry, stand and walk, such limitations were not present prior to September 30, 2014.

(Tr. 19); *see also* Tr. 20 ("The undersigned concurs with the assessment [of the state agency reviewing physician] that new evidence is not material with respect to the claimant's functional abilities prior to her date last insured."). Were the ALJ to have credited Dr. Christman's opinions regarding lifting and standing—offered in June 2013, well before Plaintiff's date last insured— this analysis would change. *See Fleischer*, 774 F. Supp. 2d at 881 ("In reaching his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.") (citations omitted). If Plaintiff were found to be limited to sedentary exertional work, she would be deemed disabled by Rule 201.06 of the Medical-Vocational Guidelines. *See* 20 C.F.R. Part 404, Subpt. P, App'x 2, § 201.06

The ALJ's failure to discuss the conflict between Dr. Christman's opinions and the RFC (as required by SSR 96-8p) deprives this Court of the ability to conduct a meaningful review of

this issue. Accordingly, the undersigned recommends the Court remand the case to the Commissioner to correct this error.

<h3 align="center">CONCLUSION</h3>

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB not supported by substantial evidence and recommends the decision be reversed and remanded pursuant to Sentence Four of 42 U.S.C. § 405(g).


                                    s/James R. Knepp II
                                    United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).